## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

RITA BALLESTEROS                    CIVIL ACTION NO. 11-CV-2030

VERSUS                              JUDGE MELANCON

MICHAEL J. ASTRUE,                  MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable
law, it is recommended that the determination be affirmed.

### Background and Commissioner's Findings

In September, 2008, Rita Ballesteros filed applications for Title II disability
insurance benefits and Title XVI supplemental security income benefits, alleging
disability since a work related incident in September 2007, due to phobia, tinnitus,
vertigo, arthritis, post-traumatic stress disorder, and BPPV.  She described
depression and anxiety, arthritis in her right knee, ringing in her ears, and fear of
loud sounds, related to an incident in her workplace. [Tr. 136] The agency denied
her applications, and Ballesteros requested a hearing before an Administrative
Law Judge.  Her request was granted, and a hearing was conducted on January 28,
2010 by ALJ Lawrence Ragona. [Tr. 35-58] On April 26, 2010, ALJ Ragona

issued a decision, denying the claim. [Tr. 14-28] Ballesteros sought review of that decision by the Appeals Council, which denied her request for review on October 7, 2011. Thus, the ALJ's denial of benefits to Ballesteros is the "final" decision of the Commissioner.

On November 22, 2011, Rita Ballesteros filed the instant Complaint in this Court, seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1] She is represented by counsel on this appeal.

### ASSIGNMENT OF ERRORS

The claimant asserts that there is no substantial evidence in the record to support the ALJ's conclusion that she could return to her past relevant work as a hotel housekeeper and jewelry polisher.  Specifically, Ballesteros asserts that there is no basis for the ALJ's residual functional capacity assessment that she could do light work. She also asserts that the ALJ failed to address the VE's testimony that she could not sustain regular work as a result of Post-Traumatic Stress Syndrome which results in crying at least once a week, or four times a month.

### APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which he was a party may obtain a review of the decision by a civil action. 42 U.S.C. 405(g). This court's review of the Commissioner's decision that the claimant

is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed.  *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d at 704.  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.  *Singletary v. Bowen*, 798 F.2d at 823.  In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo*,  or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Boyd v. Apfel,* 239 F.3d at

704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).   To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174(5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court. *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).

*Disability* is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).  *Substantial gainful activity* is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. §404.1572(a)-(b).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether

the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.  "Determining whether a claimant is disabled because of a mental condition under the above sequential process can be a difficult task." *Singletary v. Bowen*, 798 F.2d 818, 820 (5th Cir. 1986).

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4).  If the Commissioner cannot make a determination at any step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990).  If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, the

-5-

Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*  Ultimately, the question of equivalence is an issue  reserved for the Commissioner.  *Spellman v. Shalala*, 1 F.3d 357, 364(5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). This is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20

-6-

CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520. The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Fields v. Bowen*, 805 F.2d 1168, 1170(5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

When a mental disability claim is made, such as bipolar disorder or major depressive disorder, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim.   Essentially, this procedure  substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and

also provides detailed guidelines for making the Step 3 determination as to whether

the mental impairment meets or exceeds the Listings.  The regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, §404.1520(a)(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments. *Satterwhite v. Barnhart*, 44 Fed. Appx. 652(5th Cir. 2002)(unpublished).

*Non-Exertional Impairments:*

Impairments that remain constant at all levels of exertion form an important

part of residual functional capacity.  These impairments are called non-exertional

impairments, because the claimant suffers these impairments constantly, whether or

not he exerts himself.  Allergies are non-exertional impairments, and may be severe.

Intolerance to stress may also be a non-exertional impairment.  Side effects from

medications have also been included in consideration as non-exertional impairments.

Pain can be a non-exertional impairment when it exists whether or not the claimant

is exerting himself in physical activities.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

Details of the claimant's employment history appear in the record in several

places, including the hearing testimony of Rita Ballesteros. She has worked as a

school custodian, a self-employed home/office cleaner, a hotel housekeeper, and a polisher/cleaner/cashier for a jewelry manufacturer. [Tr. 137, 150-154, 164] The claimant also provided information about her educational background, which she declared in medical histories and on SSA forms includes high school graduation, but admitted during hearing testimony is only to ninth grade. [Tr. 138-142] The same forms include the handwritten comments by the claimant that she relies on her husband for most household chores and some of her personal hygiene needs, though she can do light laundry and dusting; she participates in shopping with her family, and she is able to drive to doctor's appointments.  She noted her ability to lift 10 pounds, at maximum, and walk about one half block before needing to rest. [Tr. 177] She does not like changes in routine or authority figures.  She describes anger build-up when stressed and thoughts of hurting someone. She reports using crutches to get around, but she acknowledges they are not doctor-prescribed. [Tr. 174-182]  A face-to-face interview resulted in observations of the claimant's abilities to answer questions without difficulty, without hearing, reading, breathing, understanding, coherency/concentration, talking/answering, sitting/standing/walking, or seeing difficulties.  According to the interviewer, the claimant

> "was polite, alert, and cooperative.  She was able to answer questions
> without difficulty.  She appeared to be in very good spirits for someone

who is alleging the mental conditions she is alleging.  She was neatly dressed and groomed.  She came alone for the interview." [Tr. 146-47]

Medical records submitted for consideration by the ALJ demonstrate that Ballesteros has sought treatment from physicians and counselors for both physical and mental problems. Records including Xray and MRI reports confirm severe osteoarthritic changes in the claimant's knees, including meniscus tears, for which conditions she has sought treatment at University Medical Center.  In December, 2008, Dr. Kenneth Ritter recorded full range of motion of all extremities without redness, heat, tenderness or swelling of any joint.   His functional assessment confirmed that lifting/carrying were not affected by the claimant's impairment, and neither were standing, walking and sitting.  The claimant was noted to be able to frequently climb, stoop, kneel, balance, crouch and crawl, and Dr. Ritter "could find no significantly disabling problem." [Tr. 306-309]  As of May, 2009, the claimant was reporting that her pain was intermittent, and she had days without pain.  Records indicate she was "not hurting enough for surgery." [Tr. 368]

Since the workplace incident described by the claimant as 'explosions' near her workspace, Ballesteros has sought treatment and evaluation for complaints of tinnitus and possible hearing loss, reported dizziness and sensitivity to sound and blurred vision. As of September, 2007, Emergency Room reports indicated that there

was nothing on examination to explain the reported ringing and congestion in the claimant's ears. [Tr. 244-245] From December, 2007 to August, 2008, Ballesteros saw Dr. Barrett Alldredge for her hearing complaints.  She was also treated at Audiology Associates  for reported vertigo.  She tested positive for BPPV[1] on the right side in May, 2008.  After treatment, she was no longer positive in October, 2008. [Tr. 276] Audiology testing revealed only mild hearing loss. [Tr. 236] The claimant's reports of blurred vision after the workplace incident were addressed as possible eye infection [Tr. 202-203], and as of December 11, 2008, Dr. Ritter reported Balesteros' uncorrected visual acuity as 20/40. [Tr. 306]

Beginning in September, 2007, Ballesteros sought treatment for stress related to the workplace explosion incident, and she was fearful of returning to work.  She underwent a psychiatric evaluation by Dr. Thomas Latour on October 15, 2007. Mental status exam notes referenced no acute distress.  The claimant was oriented to time/person/place and situation.  Her thought processes were intact, and her memory was intact for remote events, with some impairment for recent events.  Intellectual functioning was noted as fair, with good general fund of knowledge, but poor judgment and insight. The claimant was found to be neither paranoid nor delusional.

---

[1]BPPV is Benign Paroxysmal Positional Vertigo.

A diagnosis of PTSD was recorded and individual therapy was recommended. [Tr. 247-249]

In November, 2008, Mrs. Ballesteros was evaluated by clinical psychologist Sandra Durdin.  The evaluator had reviewed records from Freedom Recovery Clinic, and she interviewed the claimant.  Her report notes adequate vision/speech/hearing, good grooming, and unremarkable gait/posture.  The claimant was talkative, friendly and articulate.  Her self-help skills were noted to be fine; vocabulary, affect/mood were normal, and overall cognitive skills were noted to be adequate.  Thought content and organization were logical and goal-oriented, and insight/judgment were found to be adequate.  Dr. Durdin opined that the claimant does not have full blown PTSD, but had an acute reaction to the explosion event, helped by medications except for loud noise reactions.  Durdin's diagnosis was simple phobia, anxiety disorder, NOS.  She concluded that Ballesteros could maintain the attention to perform simple repetitive tasks for two hour blocks of time, and she had the adequate ability to sustain effort and persist at normal pace over a 40 hour workweek. She is capable of managing her personal financial affairs; she has the ability to relate to others well and adequate ability to tolerate the stress/pressure associated with day to day work activities and demands. Per Dr. Durdin, the claimant "should not seek employment in an environment which is very similar to where she experienced problems" or in which

she would hear a lot of sudden loud noise, and she may be anxious around certain machinery. [Tr. 301-303]

Mrs. Ballesteros  began counseling at Tyler Mental Health Clinic in April, 2009.  From April 1, 2009 through February, 2010, she was seen by Drs. David Regan (intake), Glenn Ally and social worker Brenda Cary.  Records indicate that Dr. Ally saw the claimant three times, in ½ hour sessions from April, 2009 through February, 2010.  [Tr. 386, 388, 431-433] Individual counseling was provided by the social worker during the interim periods.  The record from Tyler Mental Health Center indicates that the claimant returned to work as a maid for some period in September/October, 2009. [Tr. 389-90] On February 23, 2010, after the hearing at issue, Dr. Ally completed a Mental Residual Functional Capacity Assessment on the claimant, noting marked limitations in the ability to carry out detailed instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within the customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination or proximity to others without being distracted, the ability to complete a normal workday/workweek without interruptions and to perform at a consistent pace, and the ability to travel in unfamiliar places or use public transportation. [Tr.  431-432] Dr. Ally further opined

that he "would consider this patient totally disabled from capacity to hold a competitive job." [Tr. 433]

*The Administrative Hearing:*

At the administrative hearing, all medical records and other documents were received into evidence[2] without objection. The hearing was commenced on January 28,2010 before ALJ Lawrence T. Ragona.   The hearing was conducted from Alexandria, Louisiana, with the plaintiff appearing by video conferencing.   Rita Ballesteros was represented by counsel.  In response to questions from the ALJ and her attorney, Ms. Ballesteros testified that she is 58 years old (DOB 12/13/53). [Tr. 39]  She has a ninth grade education, though she admits she has misrepresented herself in the past as a high school graduate, and the record contains several of those misrepresentations. [Tr. 40, 142, 247, 302, 305] She describes her abilities to  read, write and do basic math as limited. [Tr. 41] She stated she last worked September, 2007. [Tr. 41] She has worked in the past as a house cleaner, as a custodian at the local school board and as a scanner of items at Stuller Settings. [Tr. 43] She is able to drive a car.

---

[2]At the claimant's request, the record was  held open for twenty days for receipt of additional medical evidence, after which time, the record was closed.

Ballesteros alleges that her health declined and she became unable to work after she experienced multiple "explosions" in her workplace.  She was frightened by the incidents, developed blurred vision, and she developed hearing problems.  Her worker's compensation claim was settled, and the claimant does not believe she could return to work at Stuller's (her former employer) if she had to do so. [Tr. 43-44] Ballesteros alleges that she likewise could not return to cleaning houses or doing custodial work because she can no longer stand, squat or bend due to swelling in her knees. [Tr. 44] She is able to carry light bags; she can stand without interference for 30 minutes, and she can do laundry. [Tr. 46, 48] She wears a knee brace sometimes. Her doctors have talked about knee surgery, but no surgery is scheduled. [Tr. 46]

Ballesteros believes that she is unable to work due to a combination of her physical problems and primarily her mental problems. [Tr. 47] She does not believe she could handle working, even in low stress environments.  She alleges that her emotional problems lead to sad thoughts and excessive crying which interfere with her ability to work. [Tr. 45, 51] She has built-up anger, and she does not like to be around people. [Tr. 47, 51]

Years ago, the claimant was diagnosed with problems at C5-6, for which surgery was recommended, but the claimant decided against it.  She now complains of right shoulder tingling, numbness, and burning, causing her to drop things. [Tr. 48]

-15-

The medications she takes for her various complaints cause her to feel sleepy, and she has migraine headaches and dizziness. [Tr. 49] When she gets dizzy, she falls.  She also complains of tinnitus which she believes affects her walking. [Tr. 49] Her energy level is also low.

**Thomas LaFosse** was called to testify as a vocational expert by the ALJ. Acknowledging his familiarity with occupations and labor statistics in the national and local economies and the skill/exertional levels defined in the Dictionary of Occupational Titles and Social Security regulations, Lafosse  confirmed that he had reviewed the record concerning the claimant's past work and had listened to her testimony. [Tr. 53-54] He described Ballesteros's work as a housekeeper from 1994-97 to be an unskilled, light duty position.  School janitorial work done by the claimant from 1997-98 was described as semi-skilled medium work.  The work done by the claimant at Stuller Jewelry Manufacturing from 2004-2007 was categorized as that of a polisher-cleaner and cashier, and described by the VE as sedentary work, semi-skilled. [Tr. 54-55]

In response to a hypothetical posed to him by the ALJ, the expert considered a person of the claimant's age, education and work experience, with no exertional limitations, but who could not do complex work.  The person could do other types of work which is not complex and involves limited interaction with the public. [Tr.  55]

With those limitations, according to the VE, the claimant could still work as a housekeeper and scanner/cashier, including jewelry polishing. [Tr. 56] In response to a second hypothetical question which incorporated the claimant's mental health limitations as described in her testimony to including frequent crying, perhaps four times a month, the VE indicated that with those limitations, the claimant could not do any jobs on a sustained basis because of excessive absenteeism. [Tr. 56] In response to the testimony by the vocational expert, Ballesteros' attorney did not ask questions on cross-examination, but he did request time to gather and submit additional medical record evidence, which request was granted. [Tr. 57] The hearing closed with the ALJ assuring the claimant that he would review all medical records and testimony in the record before publishing a decision. [Tr. 57-58]

**The Determination of the ALJ:**

The record demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Rita Ballesteros. In this case, the Commissioner found, at step one, that Jolivette had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date. At step two, the claimant was found to have severe impairments of degenerative joint disease and osteoarthritis of the bilateral knees with chronic knee pain, posttraumatic stress disorder, depression and anxiety. [Tr. 19] Although the claimant alleges a severe hearing impairment, the ALJ referenced

-17-

examination notes of Dr. Barry Alldredge which indicated only mild sensorineural hearing loss in both ears.  Further the bulk of the claimant's medical history was for things other than hearing.  On that basis, the ALJ found the hearing problem as alleged not to be severe.  That finding is supported by substantial evidence.  At step three, the ALJ found that Ballesteros does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1,(20 CFR 416.920(d), 416.925 and 416.926).  In making that finding, the ALJ considered the "paragraph B" criteria to find the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation of extended duration so as to satisfy the "paragraph B" criteria. [Tr. 321-323] The ALJ further found that the evidence fails to establish the presence of the "paragraph C" criteria. [Tr. 20]

The ALJ acknowledged use of the "paragraph B" criteria at steps 2 and 3 to rate the severity of mental impairments and the more detailed assessment required at steps 4 and 5.  Before proceeding to step four, the ALJ found that Rita Ballesteros has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she must avoid work with complex tasks or instructions, although she can do other work; and she is restricted to only limited interaction with the general public. [Tr. 21]   In arriving at the RFC, the ALJ

considered the symptoms reported by the claimant and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence. He also considered opinion evidence available to him, and he made a determination on the credibility of the claimant's assertions of symptoms and limitations when compared with the objective medical findings. [Tr. 21] He followed the requisite two-step process to determine (1) whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms and if so, (2)to evaluate the intensity, persistence and limiting effects of the symptoms to determine the extent to which they limit his functioning.  The ALJ found that Rita Ballesteros's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the RFC. [Tr. 22] Specifically, the ALJ found the claimant's "testimony was riddled with inconsistencies and conflicted with the evidence of record." [Tr. 23] The ALJ gave little weight to the opinions of treatment providers at Freedom Recovery Center, finding that the statements from the center regarding the claimant's inability to work due to mental impairments were "highly suspect" since they were dependent on the subjective desires and reports of symptoms by the claimant, who the ALJ finds not

to be credible as a reliable reporter of symptoms and complaints. [Tr. 23] He similarly rejected the opinion of Dr. Glenn Alley, who "apparently relied quite heavily on the claimant's subjective report of symptoms and limitations, and seemed to uncritically accept as true most, if not all, of what she reported." [Tr. 23] The ALJ gave great weight to the opinions and assessments of Dr. Sandra Durdin, consultative examiner, who concluded that Ballesteros has adequate ability to understand, remember and carry out simple instructions and familiar detailed instructions; she has good ability to maintain attention for simple repetitive tasks for two-hour blocks of time; she can adequately sustain effort and persist at a normal pace over a forty-hour workweek; she can adequately tolerate stress and pressure associated with day-to-day work activity, and she has good ability to relate to others, including supervisors and co-workers.  The claimant is also capable of managing her personal financial affairs, according to the consultant.[Tr. 23] In sum, the ALJ, after considering the factors in 20 CFR 404.1529(c)(3) and Social Security Ruling 96-7p, could not accept the claimant's allegations of disabling symptoms and limitations.  These findings are supported by substantial evidence in the record, including opinion evidence, as cited in some detail in the Decision and herein.

At step four, the ALJ found that Rita Ballesteros is capable of performing her past relevant work as a hotel housekeeper, which is classified as light, unskilled work,

and a jewelry polisher, classified as sedentary[3], unskilled work. That work does not require the performance of work-related activities precluded by the RFC. On that finding, which the undersigned finds is supported by substantial evidence, it was unnecessary for the ALJ to go further to step five, since if an individual is capable of performing the work she has done in the past, a finding of not disabled must be made at step four.

***The ALJ's Decision is supported by substantial evidence.***

In calling for reversal of the ALJ's determination that she is not disabled, Ballesteros asserts that there is no medical evidence in the record to support the ALJ's conclusion that she could return to light work. That assertion is belied by the record evidence cited by the ALJ in the Decision and referenced above. The ALJ accepted the results of 2009 MRI scans to give the claimant "the benefit of the doubt that her knee causes significant limitations." [Tr. 22] He likewise gave no weight to the opinion of Dr. Ritter that the claimant has no physical limitations. [Tr. 23] Even so, other medical evidence in the record documents examination findings of the claimant's full range of motion of all extremities without tenderness or swelling of any joint and the fact that the claimant was "not hurting enough for surgery" to

---

[3]If an individual is determined to be able to do light work, it is assumed that he/she can also do sedentary work. 20 CFR 404.1567(b) and 416.967(b).

-21-

address her knee problems. [Tr.  368] That evidence, combined with the absence in the record of any physical restrictions/limitations imposed by physicians which would prohibit light work constitutes substantial evidence to support the ALJ's RFC findings in that regard.

Ballesteros  urges that it was error for the ALJ to reject the opinion of Dr. Glenn Ally that the claimant is "totally disabled from capacity to hold a competitive job." [Rec. Doc. 7, p. 5] The basis for the rejection of that opinion is stated in the Decision.  [Tr. 23] In light of the spare record of treatment by Dr. Ally, his limited contact with the claimant, and the timing of his opinion after the hearing date, the ALJ's justification for rejecting his opinion is supported by substantial evidence. When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision. *DeLeon v. Barnhart*, 174 Fed. App'x 201, 202(5th Cir. 2006), *citing Greenspan v. Shalala*, 38 F.3d 232, 237(5th Cir. 1994).

The task of weighing the evidence is in the sole province of the ALJ.  See *Chambliss v. Massanari*, 269 F.3d 520, 523(5th Cir. 2001).  It is well-settled that the ALJ need not give greater weight to a claimant's subjective complaints than to the objective medical evidence.  *Falco v. Shalala*, 27 F.3d 160, 164(5th Cir. 1994). Further the ALJ may discount a claimant's subjective complaints if there are

-22-

inconsistencies between the alleged symptoms/limitations and the evidence as a whole. *Vaughn v. Shalala*, 58 F.3d 129, 131(5th Cir. 1995).  In this case, the ALJ clearly questioned and ultimately rejected the claimant's representations on several critical issues.

On the issue of the claimant's credibility, it is noted that in this case, the ALJ found that Ballesteros's medically determinable impairments could reasonably be expected to produce her alleged symptoms.  Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of her symptoms.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p, *1   The regulations state:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p, *4.

The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). In this case, the ALJ expressly noted the misrepresentations made by the claimant regarding her education and her work history during her sworn testimony

and in reports to treatment providers. [Tr. 23] The ALJ found that pattern of misrepresentation to likely continue in the claimant's statements as to symptoms and limitations relied upon by Dr. Ally and others.  Accordingly, the undersigned finds that the ALJ applied the proper legal standard in evaluating the claimant's credibility. The ALJ made an express credibility finding and he considered the factors described in 20 CFR 404.1529(c)(3) and SSR 96-7p to conclude that he is unable to accept the claimant's allegations of disabling symptoms and limitations.  The undersigned finds that the ALJ's narrative was sufficient.

On review of the decision, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *Johnson v. Bowen*, 864 F.2d 340, 343-344(5th Cir. 1988); citing *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983).  Applying that standard, the undersigned finds that the decision is based on substantial evidence.

### *The ALJ was not required to rely on a vocational expert at step four.*

Ballesteros next raises the issue of the ALJ's questioning of the vocational expert during the administrative hearing, asserting that the ALJ's hypothetical questions to the VE contradict his findings regarding  the claimant's residual functional capacity and her ability to perform her past relevant work.  It is true that the ALJ posed hypothetical questions to the vocational expert at the hearing, based

in part on the RFC that the claimant is restricted by the inability to do complex work and the need for limited interaction with the public. [Tr.  55] With those limitations, according to the VE, the claimant could still work as a housekeeper and scanner/cashier, including jewelry polishing. [Tr. 56] In response to a second hypothetical question which incorporated the claimant's mental health limitations as described in her testimony to including frequent crying, perhaps four times a month, the VE indicated that with those limitations, the claimant could not do any jobs on a sustained basis because of excessive absenteeism. [Tr. 56] The statements by the VE must be considered in context and not in isolation.  First, the undersigned notes that the ALJ was not required to rely on the VE at all at step four, since an expert is not needed if the ALJ concludes that a claimant could return to her past relevant work. *See Williams v. Califano*, 590 F.2d 1332, 1334(5th Cir. 1979).   The use of a vocational expert is appropriate only if the analysis moves to step five and a determination must be made of whether the claimant's skills can be used in other work and of what other specific jobs are possible for the claimant and available to her. 20 CFR §404.1566(e).  The record also demonstrates that the ALJ did not accept the notion that Ballesteros would have to miss work on an irregular basis, finding that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual

-25-

functional capacity assessment. [Tr. 22] An ALJ is not bound by vocational expert testimony which is based upon hypothetical assumptions that are rejected by the ALJ. See *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). Thus, it is not significant that the ALJ rejected the VE's testimony regarding irregular absences from work in reaching his decision. *Bowling v. Shalala*, 36 F.3d 431, 436(5th Cir. 1994); *Owens v. Heckler*, 770 F.2d 1276, 1282(5th Cir. 1985). The undersigned finds no reversible error here.

## CONCLUSION AND RECOMMENDATION

It is well-established that "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176, *citing Moore v. Sullivan*, 919 F.2d 901, 905(5th Cir. 1990). As discussed above, this Court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990). In the instant case, the record demonstrates that the proper legal standards were applied to consideration of Rita Ballesteros's claims, and the undersigned cannot conclude that the ALJ failed to base his determination on substantial evidence, that is evidence which is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d  at 704.

Applying the appropriate review standard to the record of the instant case,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 28th day of November, 2012.

Patrick J. Hanna
United States Magistrate Judge